In the Matter of the Application of MOSES JACOB and Others, as Executors, etc., of HIMAN JACOB, Deceased, Respondents, for a Peremptory Mandamus Order against JOHN F. GILCHRIST and Others, Constituting the State Tax Commission, Appellants.

First Department, November 28, 1924.

Taxation — transfer tax — will created contingent remainders — taxing
order fixed value of remainders — construing Tax Law, §§ 222, 223, 230,
and 241, transfer taxes are due and payable at time of ·transfer except
taxes on transfers conditioned upon contingency preventing ascertain-
ment of fair market value at time of transfer — exception not applicable
to present case since fair market value of a'l property has been ascer-
tained — tax on contingent remainders was payable at date of death
of testator at highest rate — tax not having been paid within eighteen
months, interest is chargeable under Tax Law, § 223.

The clear intent of sections 222, 223, 230 and 241 of the Tax Law is that all
transfer taxes imposed by the statute shall be due and payable at the time of
the transfer with the exception that taxes upon the transfer of any estate,
property or interest therein limited, conditioned, and dependent or determinable
upon the happening of any contingency or future event by reason of which the
fair market value thereof cannot be ascertained at the time of the transfer,
shall accrue and become due and payable when the person or corporation bene-
ficially entitled thereto shall come into actual possession or enjoyment thereof.

The exception to the rule that transfer taxes are payable at the time of the transfer
does not apply to the present case, since it appears that the fair market value
of all the property of the decedent has been ascertained and is specified in the
report of the appraiser and the taxing order, and, therefore, although the will
created certain contingent remainders the entire tax on the estate was due and
payable at the time of the transfer.

The contingent remainders in question were, under the statute, transferred
immediately upon the death of the testator, and the tax thereon was then
payable. The amount of the tax was on the basis of the highest possible rate
which could in any event be imposed on the value of the remainders as fixed
and determined.

Under section 223 of the Tax Law, interest was chargeable at the rate of ten per cent per annum on the amount of the tax remaining unpaid at the end of eighteen months after it was payable.

APPEAL by John F. Gilchrist and others, constituting the State Tax Commission, from a peremptory mandamus order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of August, 1924, directing the State Tax Commission to issue to the petitioners receipts for the payment in full of transfer taxes on the estate of Himan Jacob, deceased.

*Charles A. Curtin* [*Seth T. Cole* of counsel], for the appellants.

*Goldman & Unger* [*William F. Unger* of counsel; *Samuel Rubin* and *David Julius Cohen* with him on the brief], for the respondents.

DOWLING, J.:

Himan Jacob, the above-named decedent, died a resident of New York county on November 26, 1917, leaving a last will and testament which was duly admitted to probate in the Surrogate's Court of New York county on January 25, 1918. The respondents herein duly qualified as executors of said will.

By said will certain contingent remainders were created. An appraiser under the Transfer Tax Law was duly appointed and filed his report, on which a taxing order was entered by the Surrogate's Court of New York county on December 15, 1920. This order was resettled on February 14, 1922, for the reason that the original order did not specify the amount of tax which would be due on the remainders if the contingencies had happened at the date of the appraisal. As resettled, the order fixed the value of the contingent remainders at $82,342, and taxed the same against the executors for the benefit of five per cent class at $4,690.52. It also provided that of said tax the amount which would be due if the contingencies had happened at the date of the appraisal was $791.55. In addition to the tax on the contingent remainders the order fixed a tax of $782.84 on vested interests in the estate.

On May 24, 1918, the sum of $1,500 was paid as tax, which, allowing for a discount of five per cent as provided by the statute, entitled the executors to a credit of $1,578.94 on account of the tax which might thereafter be determined payable.

No further payment of tax was made, nor were any securities deposited by respondents, until April 14, 1924, when the sum of $3,898.97 was paid in cash.

The respondents seek to compel the State Tax Commission to accept the tax of $3,898.97 without interest and to receipt in full for the transfer tax imposed on the estate of the decedent.

It is claimed by respondents that the difference between the tax which would be due on the contingent remainders if the contingencies had happened at the date of the appraisal, and the tax thereon at the highest rate which on the happening of any of the contingencies or conditions would be possible, to wit, the sum of $3,898.97, will not accrue until the contingencies or conditions happen.   Appellants claim that the entire tax imposed upon the estate accrued at the time of the death of the decedent on November 26, 1917, and that that portion of the tax which was not paid within eighteen months after the decedent's death is subject to interest at the rate of ten per cent per annum from November 26, 1917, as provided in section 223 of the Tax Law.

The provisions of the Transfer Tax Law as contained in the Tax Law applicable to the question here presented are as follows:

" § 222. Accrual and payment of tax.   All taxes imposed by this article shall be due and payable at the time of the transfer, except as herein otherwise provided.   Taxes upon the transfer of any estate, property or interest therein limited, conditioned, dependent or determinable upon the happening of any contingency or future event by reason of which the fair market value thereof can not be ascertained at the time of the transfer as herein provided, shall accrue and become due and payable when the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof.   Such tax shall be paid to the State Comptroller [Tax Commission] in a county in which the office of appraiser is salaried, and in other counties, to the county treasurer, and said State Comptroller [Tax Commission] or county treasurer shall give [furnish], and every executor, administrator or trustee shall take duplicate receipts *from him* of such payment as provided in section two hundred and thirty-six." (Since amd. by Laws of 1921, chap. 476.   Words in italic have been omitted.)

Section 223, in so far as it is pertinent to the present inquiry, reads:

" Discount and interest.   If such tax is paid within six months from the accrual thereof, a discount of five per centum shall be allowed and deducted therefrom. If such tax is not paid within eighteen months from the accrual thereof, interest shall be charged and collected thereon at the rate of ten per centum per annum from the time the tax accrued   *   *   *." (Amd. by Laws of 1917, chap. 128.   Since amd. by Laws of 1921, chap. 476.)

Section 230 reads, as far as is material to the instant case: " When property is transferred in trust or otherwise, and the rights, interest or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part

created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith by the executors or trustees out of the property transferred, and the surrogate shall enter a temporary order determining the amount of said tax in accordance with this provision; provided, however, that on the happening of any contingency whereby the said property or any part thereof, is transferred to a person or corporation exempt from taxation under the provisions of this article, or to any person taxable at a rate less than the rate imposed and paid, such person or corporation shall be entitled to a return of so much of the tax imposed and paid as is the difference between the amount paid and the amount which said person or corporation should pay under the provisions of this article; and the executor or trustee of each estate, or the legal representative having charge of the trust fund, shall immediately upon the happening of said contingencies or conditions apply to the surrogate of the proper county, upon a verified petition setting forth all the facts, and giving at least ten days' notice by mail to all interested persons or corporations, for an order modifying the temporary taxing order of said surrogate so as to provide for the final assessment and determination of the tax in accordance with the ultimate transfer or devolution of said property. Such return of overpayment shall be made in the manner provided by section two hundred and twenty-five of this chapter." (Amd. by Laws of 1916, chap. 550. Since amd. by Laws of 1921, chap. 476, and Laws of 1924, chap. 657.)

Section 241 reads in part: " Whenever the tax on a contingent remainder has been determined at the highest rate which on the happening of any of said contingencies or conditions would be possible under the provisions of this article, the State Comptroller [Tax Commission], in the counties wherein this tax is payable direct to him [it], and in all other counties the treasurer of said counties, respectively, when such tax is paid shall retain and hold to the credit of said estate so much of the tax assessed upon such contingent remainders as represents the difference between the tax at the highest rate and the tax upon such remainders which would be due if the contingencies or conditions had happened at the date of the appraisal of said estate, and the State Comptroller [Tax Commission] or the county treasurer shall deposit the amount of tax so retained in some solvent trust company or trust companies or savings banks in this State [designated by the State Comptroller], to

the credit of such estate [the State Comptroller on account of such estate], paying the interest thereon when collected by him to the executor or trustee of said estate, to be applied by said executor or trustee as provided by the decedent's will. Upon the happening of the contingencies or conditions whereby the remainder ultimately vests in possession, if the remainder then passes to persons taxable at the highest rate, the State Comptroller *or the county treasurer* [on the certificate of the Tax Commission], shall turn over the amount so retained *by him* to the State Treasurer as provided herein and by section two hundred and forty of this article [chapter], or if the remainder ultimately vests in persons taxable at a lower rate or a person or corporation exempt from taxation by the provisions of this article, the State Comptroller *or the county treasurer* [on the certificate of the Tax Commission] shall refund any excess of tax so held *by him* to the executor or trustee of the estate, to be disposed of by said executor or trustee as provided by the decedent's will. Executors or trustees of any estate may elect to assign to and deposit with the State Comptroller [Tax Commission] or the county treasurer, bonds or other securities of the estate approved by the State Comptroller [Tax Commission], or the county treasurer, both as to the form of the collateral and the amount thereof, for the purpose of securing the payment of the difference between the tax on said remainder at the highest rate and the tax upon said remainder which would be due if the contingencies or conditions had happened at the date of the appraisal of said estate, and cash for the balance of said tax as assessed, which said bonds or other securities shall be held by the State Comptroller [Tax Commission], or the county treasurer, to the credit of said estate until the actual vesting of said remainders, the income therefrom when received by the State Comptroller [Tax Commission], or the county treasurer to be paid over to the executor or trustee during the continuance of the trust estates and then to be finally disposed of in accordance with the ultimate transfer or devolution of said remainders as hereinbefore provided; and it shall be the duty of the executors or trustees of such estates to forthwith notify the State Comptroller [Tax Commission] of the actual vesting of all such contingent remainders.

" If any executor or trustee shall have deposited with the State Comptroller [Tax Commission], or the county treasurer, cash or securities, or both cash and securities, to an amount in excess of the sum necessary to pay the transfer tax upon such contingent remainders at the highest rate as aforesaid, the excess of tax so deposited shall be returned to the executor or trustee, or if any executor or trustee shall have deposited with the State Comptroller [Tax Commission], or the county treasurer, cash or securities, or both cash

and securities, to an amount less than is sufficient to pay the tax upon such contingent remainders as finally assessed and determined, the executor or trustee of said estate shall forthwith, upon the entry of the order determining the correct amount of tax due, pay to the State Comptroller [Tax Commission], or the county treasurer, whichever is entitled under the provisions of this article to receive the tax, the balance due on account of said tax." (Amd. by Laws of 1911, chap. 800. Since amd. by Laws of 1921, chap. 476. Words in italic have been omitted.)

Examination of these provisions of the Transfer Tax Law leads to the conclusion that it is clearly intended thereby that all transfer taxes imposed by the statute shall be due and payable at the time of the transfer; except as otherwise therein provided. The only exception to this general rule contained in the statute is that taxes upon the transfer of any estate, property or interest therein limited, conditioned, dependent or determinable upon the happening of any contingency or future event by reason of which the fair market value thereof cannot be ascertained at the time of the transfer shall accrue and become due and payable when the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof. The exception does not apply in this case for the reason that the fair market value of all of the property of the decedent has been ascertained and is specified in the report of the appraiser and the taxing order. (*Matter of Zborowski*, 213 N. Y. 109.) In that case Judge MILLER, writing for a unanimous court, said (at p. 116): "The different statutes hereinbefore referred to contain evidence of a constant effort of the Legislature to enlarge the class of transfers immediately taxable upon the death of the transferror. The question of the Legislature's power in that regard was set at rest by the decision of this court in *Matter of Vanderbilt* (172 N. Y. 69). In one aspect it may be unjust to the life tenant to tax at once the transfer, both of the life estate and of the remainder though contingent, and it may seem unwise for the State to collect taxes which it may have to refund with interest, but those considerations are solely for the Legislature, who are to judge whether they are more than offset by the greater certainty which the State thus has of receiving the tax ultimately its due under the statute. However unwise or unjust it may seem in a particular case like this for the State to collect the tax at the highest rate when in all probability the remainder will vest in a class taxable at the lowest rate, it is the duty of this court to give effect to the statute as it is written." (Followed in *Matter of Parker*, 226 N. Y. 260; the extract just quoted cited with approval in *Matter of Cole*, 235 N. Y. 48, 53.)

The question of the time of the accrual of taxes on contingent remainders was before Surrogate THOMAS of New York county in the transfer tax proceeding on the estate of Meyer Guggenheim. The opinion of the surrogate is reported in *Matter of Guggenheim* (N. Y. L. J. Jan. 4, 1906), and reads: " Appeal by executors and trustee and by charitable corporations from order fixing tax. The decedent died March 16, 1905. By the 11th clause of his will he created a trust fund of $500,000 for the benefit of his grand-daughter, Nettie Gerstle, now fifteen years of age and unmarried. She is to receive the income during her life, and, on her marriage, $200,000 of the principal. Upon her death the principal is to be divided equally among her children and issue of deceased children, *per stirpes;* and in default of issue, it is to be divided into two equal parts, one of such parts to be divided equally among the four appealing corporations, and the other part among decedent's grandchildren surviving Nettie Gerstle. The appraiser reports the value of Nettie Gerstle's life interest in the fund of $500,000 and the value of the remainder interests. The remainder interest of each of the corporations is fixed at $11,007.37, and the order assesses a tax thereon of 5 per cent. At the time of decedent's death bequests to charitable and hospital corporations were subject to such tax (Tax Law, sec. 221, as amended in 1903).* By chapter 368, Laws of 1905 (in effect June 1, 1905, and at the time of the appraisal), such corporations are specifically exempted from the tax. The corporations contend that as to these remainder interests there has been no transfer, and that there will not be any to them unless Nettie Gerstle should die without issue her surviving. The decisions in *Matter of Vanderbilt* (172 N Y. 69) and *Matter of Brez* (Id. 609) are fatal to this contention. There was a consummated transfer to the trustee at the moment of the testator's death, and upon this transfer the tax is imposed. *  *  * " (Affd., 116 App. Div. 914; 189 N. Y. 561.)

In the present case, therefore, it follows under the language of the statute and the authority of the decisions quoted, that the time of the transfer of the contingent remainder in question was the death of the testator; that the tax thereon was payable immediately on such death; and that the amount of the tax then payable was at the highest possible rate which could in any event be imposed on the value of the remainders as fixed and determined. The provisions of section 223 of the Transfer Tax Law thus becoming operative, if the tax had been paid within six months from the time of decedent's death, a discount of five per cent would

---

* See Laws of 1903, chap. 41.— [REP.

have been allowed; not having been paid within eighteen months from death, interest was chargeable at the rate of ten per cent per annum from the time the tax accrued. In fact, the executors did not pay the balance of the principal of the tax until more than six years after the death of decedent, and then made no payment of any interest whatever. The estate was liable for interest for the period and at the rate fixed by the statute, and the executors had not made payment in full of the amount due under the Transfer Tax Law, and were not entitled to receipts showing payment in full of the amount due for transfer taxes.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with fifty dollars costs.

CLARKE, P. J., SMITH, MERRELL and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.